## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EDWIN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 2:21-cv-986-AMM |
| CITY OF BIRMINGHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This case comes before the court on a motion for summary judgment filed by Defendant the City of Birmingham ("the City"). Doc. 32. For the reasons explained below, the motion is **GRANTED**.

## I.     BACKGROUND

Facts set forth in the parties' statement of undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or reply of the opposing party. Doc. 21 at 19–20. Where disputed, the facts are construed in the light most favorable to the non-movant, Plaintiff Edwin Jones. The only deposition in the record is that of Mr. Jones; Mr. Jones did not depose any employee or representative of the City. Mr. Jones did not file any evidence in support of his opposition to the City's motion for summary judgment.

Mr. Jones began working for the City as a police officer on April 5, 2014. Doc. 33-1 at 6, Depo. 17:1–7. As of 2020, Mr. Jones had a juris doctorate and twenty-one years of experience as a police officer. *Id*. at Depo. 15:9–10; Doc. 33-2. at 4, Depo. 46:21–47:1.

Mr. Jones applied for a promotion to the rank of Police Sergeant in September 2020. *See* Doc. 33-9 at 3. As explained below, the City discontinued the September 2020 promotional process and no one was promoted at the time. *Id*. at 4. Mr. Jones applied again for the promotional process and was not promoted in January 2021. *Id*. at 5. Mr. Jones was promoted to the rank of Police Sergeant on August 26, 2022. Doc. 33-1 at 6, Depo. 16:20–21.

Patrick Smith was the Chief of Police at the time of the September 2020 and January 2021 promotional processes. Doc. 33-9 at 5. According to the affidavit of Veronica Merritt, the Chief Compliance Officer for the City, Chief Smith "was the ultimate decisionmaker" in the promotional process. *Id*. Mr. Jones does not dispute that Chief Smith was the ultimate decisionmaker. *See* Doc. 34 at 9; Doc. 36-1 at 2.

Mr. Jones filed multiple EEOC charges against the City over the years. *See* Doc. 33-1 at 5, Depo. 12:1–4. Mr. Jones filed two EEOC charges in 2015 and 2016, which formed the basis of a lawsuit in 2016. *See id*. at 6, Depo. 14:2–22. Mr. Jones then filed another EEOC charge in December 2018. *Id*. at 5, Depo. 12:7–18. The December 2018 EEOC charge led to a settlement in 2019. Doc. 1-1 at 2. Prior to that

2

settlement, Mr. Jones "filed an additional charge for retaliation against [the City] naming [Captain] David Rocket and [Lieutenant] Rebecca Herrera as individuals who were harassing [him] after [he] filed [his] charge." *Id*. That charge became the basis of a lawsuit filed against the City on August 29, 2019. *See* Doc. 34 ¶ 45; Complaint, *Jones v. City of Birmingham*, 2:19-cv-1426-CLM (N.D. Ala. Aug. 29, 2019), ECF No. 1.

### A.    September 2020 Promotional Process

For the Police Sergeant promotional process, the Personnel Board of Jefferson County ("Personnel Board") first "provided the City . . . with a certification list of eligible candidates." Doc. 33-9 at 30. Mr. Jones testified that he was ranked "in the top five" in the list that the Personnel Board created. Doc. 33-1 at 9, Depo. 26:3–12. Mr. Jones also testified that he does not believe the Personnel Board's process was "invalid in any way," *id*. at Depo. 29:22, and that this action was filed in connection with "the City's secondary selection process" after the Personnel Board provided the City with the list of eligible candidates, *id*. at Depo. 26:17–22.

The City's selection process consisted of three phases. *See* Doc. 33-9 at 30–34. In Phase 1, candidates were "asked to complete exercises which simulate tasks commonly performed by Police Sergeants" ("Work Sample Exercise"). *Id*. at 31. In Phase 2, candidates were asked to submit their Personal Accomplishment Workbooks ("PAWs"), consisting of documentation of "Career Experience,"

"Education," "Training/Career Related Skill Development," "Significant Work Accomplishment," and "Disciplinary Actions." *Id*. at 31–32. In Phase 3, candidates "participate[d] in a panel interview." *Id*. at 33. "Selections for Phase 3 [were] based on the Rule of 10." *Id*. "The Rule of 10 requires that the number of vacancies plus 9 be the number of top-scoring candidates considered for the vacant positions (e.g., 2 vacancies = 11 candidates; 3 vacancies = 12 candidates)." *Id*.

Phase 1 had a maximum of 42 points and Phase 2 had a maximum of 45 points. *See id*. at 91. The PAW Scoring Rubric provided for a maximum of 8 points for "Career Experience," 10 points for "Education," 10 points for "Training/Career Related Skill Development," 15 points for "Significant Work Accomplishments," and 2 points for "Organization and Professionalism of PAW." *Id*. at 42–43. "Disciplinary Actions" resulted in deductions, with the possibility of earning up to 3 points for remediation efforts. *Id*. at 43.

PAWs were "scored by [Birmingham Police Department] leadership, with oversight from Human Resources to ensure consistency across all candidates." *Id*. at 33. Candidates were provided with "a conflict form with a list of panelists scoring the PAWs," and asked to "indicate if [they] [had] a personal or familial relationship with any of the panelists." *Id*. Candidates were also "given the opportunity to strike the name of one (1) panelist whom [they] would not like to score [their] PAW." *Id*.

Candidates who were "disqualified from the promotional process" could "submit a written appeal" to Chief Compliance Officer Ms. Merritt, limited only to "procedural matters related to test administration." *Id*. at 38. "All final appeal determinations [were] reviewed by Jill Madajczywk, Chief Human Resource Officer." *Id*.

Mr. Jones's Phase 1 Work Sample Exercise for the September 2020 promotional process was scored by Ms. Madajczyk and Tina Moorer. *Id*. at 3–4; *see also* Doc. 33-7 at 5, 9. On October 2, 2020, Mr. Jones emailed Human Resources and stated that "there [were] more than one individual that need[ed] to be removed [from his panel for Phase 2] due to past conflict." Doc. 33-7 at 3. Mr. Jones wrote, "I feel it will negatively impact my performance on the review. The two individuals are listed in an active federal lawsuit and their names are: [] Captain Julie Quigley-Vining and Lieutenant Rebecca Herrera[.]" *Id*. Human Resources responded that it "will take this matter under consideration." *Id*. at 2. Captain Sean Edwards, Lieutenant Marion Benson, and Lieutenant Michael Sellers scored Mr. Jones's PAW for Phase 2. Doc. 33-9 at 4; *see also* Doc. 33-7 at 8.

Mr. Jones testified that he had a Phase 3 interview scheduled for the September 2020 promotional process. Doc. 33-1 at 9, Depo. 27:15–16. But the interview did not take place. *Id*. at Depo. 27:20–21. On November 12, 2020, Chief Smith sent an email about the promotional process to Police Sergeant candidates.

5

Doc. 33-7 at 10. Chief Smith informed candidates that the City was "stopping the Sergeant promotional process" and that "the Phase 3 interviews scheduled for Friday, November 13, 2020, will NOT take place." Doc. 33-8 at 1. Chief Smith explained that "[a]s the [promotional] process launched and moved forward, the City was dealing with the COVID crisis with budget reviews happening week to week in the Finance department, and over time positions were cut from the Police Department's budget – including at the rank of Sergeant." *Id*. He continued, "Now knowing that we have less than the number of positions that we originally requested, it would be unfair to move forward knowing that there are candidates in the pool who would not have qualified had we gone in with the lower number." *Id*.

Chief Compliance Officer Ms. Merritt attested in her affidavit that

> [a] decision was made to discontinue the September 2020 Police Sergeant promotional process due to a change in the number of Police Sergeant vacancies due to budget cuts, concerns about the possible breach of confidentiality during testing process, inconsistencies in the reporting of the candidates' disciplinary history, and confusion related to the work sample exercise having a second question on the back of the paper resulting in a number of candidates missing the second question.

Doc. 33-9 at 4. "As a result . .. [n]o promotions were made from the September 2020 process." *Id*.

## B.    January 2021 Promotional Process

The City restarted the Sergeant promotional process in December 2020, which lasted through January 2021. *See id*. at 45. The process remained the same. *See id*.

6

at 58–62. This time, Captain Sheila Finney, Captain Thomas Hanks, and Captain Theophilus Smith scored all candidates' Phase 1 Work Sample Exercises, including Mr. Jones's. Doc. 33-9 at 4; *see also id*. at 86. Captain Finney is Black. Doc. 33-2 at 2–3, Depo. 41:23–42:1. Captain Hanks is white. *Id*. at 3, Depo. 42:2–3. Captain Smith is Black. *Id*. at Depo. 42:4–5.

Captain Scott Thurmond, Je'Nea Jones, and Tina Moorer scored all candidates' PAWs, including Mr. Jones's. Doc. 33-9 at 4–5; *see also id*. at 88. Captain Thurmond is white. Doc. 33-2 at 3, Depo. 42:21–23. Ms. Jones is Black. *Id*. at Depo 43:9–13. Mr. Jones testified that he does not know the race of Ms. Moorer. *See id*. at Depo. 43:14–16.

Mr. Jones had a total score of 53.50 out of 87 for Phases 1 and 2. Doc. 33-9 at 5; *see also id.* at 91. Mr. Jones's score was ranked twenty-eighth out of sixty-nine candidates. *See id*. at 91. Only the candidates with the top twenty-four scores progressed to Phase 3. *Id*. at 5. Among those candidates who participated in Phase 3, candidates with the top fourteen scores were promoted to the rank of Police Sergeant. *Id*.; *see also id*. at 93. Four of those candidates were white and ten of them were Black. *Id*. at 93; *see also* Doc. 33-2 at 3, Depo. 43:22–44:4 (Mr. Jones's deposition testimony that some of the candidates who were promoted were white and some of them Black).

### C.    Mr. Jones's Deposition Testimony

Mr. Jones testified that he believed he "[was] more qualified than every single officer that was promoted." Doc. 33-2 at 3, Depo. 44:7–9. Specifically, Mr. Jones testified that there was only one other candidate who had an advanced degree such as a juris doctorate and that no other candidate had more years of experience as a police officer than he had. *Id*. at 4, Depo. 46:5–47:5. Mr. Jones also testified that he did not know the Phase 1 or Phase 2 scores of any of the candidates who were promoted. *Id*. at Depo. 47:6–10.

When asked whether he believed "race played a part to the detriment of the [B]lack officers" in the promotional process, Mr. Jones replied, "I don't know about all of them. But toward me, yes." *Id*. at Depo. 47:16–18. Specifically, Mr. Jones testified that "the process did not work in [his] favor because of [his] race and because of [his] previous filing of EEOC claims against Jill Madajczyk and Quigley and actually Thomas Hanks." *Id*. at Depo. 48:8–13. Ms. Madajczyk, Captain Quigley-Vining, and Captain Hanks are white. *Id*. at Depo. 48:13–14.

### 1.  Jill Madajczyk

When asked about how race motivated Ms. Madajczyk, Mr. Jones replied that "she promoted less qualified white candidates over [him]." Doc. 33-1 at 9, Depo. 29: 4–6. Mr. Jones testified that it was his "understanding[ that] each time that [he] took the exam, [Ms. Madajczyk] was a part of it, of going over the program, reviewing and scoring it." Doc. 33-2 at 5, Depo. 50:4–6. Mr. Jones "never walked in and

8

actually saw her sitting down and scoring" because Ms. Madajczyk "was so secretive about the process" and he could "only get knowledge by word of mouth through the department." *Id*. at Depo. 50:7–13. Ms. Madajczyk has not made any race-based statements towards him. Doc. 33-1 at 9, Depo. 29:7–8.

### 2. Captain Quigley-Vining

Mr. Jones testified that Captain Quigley-Vining "has shown [him] race tendencies" and that he has "seen and heard of her being disrespectful toward African-Americans." Doc. 33-1 at 7, Depo. 20:9–12. Mr. Jones also testified that he has not "had any interactions with Captain Quigley-Vining in the past five years." *Id*. at Depo. 20:16–18. Captain Quigley-Vining has "worked in the same precinct [that] [Mr. Jones] worked in," but she "was never directly over [him]" in the chain of command. *Id*. at 8, Depo. 25:15–17.

### 3. Lieutenant Herrera

Mr. Jones testified that Captain Quigley-Vining and Lieutenant Herrera were "best friends." *Id*. at 7, Depo. 20:8–9. Mr. Jones also testified that "[a] couple of [B]lack guys, from what [he] heard, from what [he] was told, applied . . . to be on the TASC force . . . [b]ut [Lieutenant Herrera] and [Captain] Quigley[-Vining] would not allow any [B]lacks on it." *Id*. at 8, Depo. 24:15–18. Lieutenant Herrera has never been in Mr. Jones's chain of command. *Id*. at Depo. 25:4–5.

When asked about the interactions he had with Lieutenant Herrera in the last five years, Mr. Jones testified about an incident when Lieutenant Herrera "came right at [him] to give [him] direction to go and do something, which [he] didn't do . . . because at that particular time she and [he] were not supposed to have any type of interaction with one another." *Id*. at 7, Depo. 21:19–23. At the time, Lieutenant Herrera "walked past . . . six other officers and [came] straight at [Mr. Jones]." *Id*. at 8, Depo. 23:17–18. All of the officers that Lieutenant Herrera passed by were Black. *Id*. at Depo. 23:21–23. According to Mr. Jones, Lieutenant Herrera "didn't say anything race, but it was just that she came to utilize her position over [him] because she was in a higher rank than [he] was." *Id*. at Depo. 23:14–16. Mr. Jones believed that the "way that she approached [him] . . . was race motivated." *Id*. at Depo. 23:19–20. Mr. Jones did not see "Lieutenant Herrera commit any other acts of discrimination toward [B]lack officers other than [himself]." *Id*. at Depo. 24:1–4.

Mr. Jones testified that a supervisor told him that Lieutenant Herrera and Captain Quigley-Vining were "involved" in the grading of his promotion. Doc. 33-1 at 10, Depo. 32:23–33:9; *see also* Doc. 33-2 at 5, Depo. 52:20–22 ("Every process that I was involved in, Lieutenant Herrera was part of it. Captain Quigley was a part of it."). Mr. Jones declined to name the supervisor who informed him of their involvement. Doc. 33-1 at 10, Depo. 33:10–14.

### 4.  Captain Hanks

Other than testifying that Captain Hanks was white and involved in the promotional process, Mr. Jones did not testify about any interaction with him. *See* Doc. 33-2 at 4, Depo. 48:15–23.

### D.   Procedural History

Mr. Jones filed this action on July 19, 2021. Doc. 1. Mr. Jones filed the amended and operative complaint on December 10, 2021. Doc. 13. Count One alleged race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). *Id*. ¶¶ 30–34. Count Two alleged retaliation under Title VII. *Id*. ¶¶ 35–40. Count Three alleged age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq*. *Id*. ¶¶ 41–47.

The City moved to dismiss the amended complaint. Doc. 15. The motion was granted in part and denied in part. Doc. 19. The court dismissed Mr. Jones's ADEA age discrimination claim but denied the motion to dismiss his Title VII race discrimination and retaliation claims. *Id*.

The City moved for summary judgment. Doc. 32. Mr. Jones filed a response out of time. Doc. 36-1. The City did not reply.

## II.   LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). The court does not "weigh conflicting evidence or make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016). But "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Anthony*, 69 F.4th at 804. "[A] mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Gogel v. Kia Motors Mfg. of Ga., Inc.,* 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (cleaned up). "Summary judgment must be granted if the nonmoving party has 'failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.'" *Rink v. Cheminova, Inc*., 400 F.3d 1286, 1294 (11th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## III.   DISCUSSION

### A. Title VII Race Discrimination Claim

"A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). "If the plaintiff uses circumstantial evidence to support his discrimination claim, [the court] generally appl[ies] the *McDonnell Douglas* burden-shifting framework." *Id*. The *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case "by demonstrating that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated similarly situated employees outside his class more favorably." *Id*. (cleaned up). "To establish the fourth prong, the plaintiff must present evidence of a comparator—someone who is similarly situated in all material respects." *Id*. (cleaned up).

But "[a]side from the *McDonnell Douglas* framework, an employee can still survive summary judgment by presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id*. at 1250 (cleaned up). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id*. "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2)

systematically better treatment of similarly situated employees, and (3) pretext." *Id.*
(cleaned up).

The court previously held that "the City's motion to dismiss Mr. Jones's
claims of race discrimination is denied, except that it is granted with regard to Mr.
Jones's claims using the comparator method, and those claims are dismissed without
prejudice to Mr. Jones's opportunity to replead them adequately." Doc. 19 at 15
(cleaned up). Mr. Jones did not amend his complaint to identify comparators. The
City asserts in its motion for summary judgment that in the light of the court's order
on the motion to dismiss, Mr. Jones's "failure to promote race discrimination claim
proceeds solely under the convincing mosaic analysis." Doc. 34 at 11. Mr. Jones's
response makes no mention of the *McDonnell Douglas* framework and sets out only
the case law on establishing a convincing mosaic of intentional discrimination. *See*
Doc. 36-1 at 3–5. Because the parties have not presented any argument about the
*McDonnell Douglas* framework for Mr. Jones's race discrimination claim, the court
considers only whether Mr. Jones has established a convincing mosaic of intentional
discrimination to survive summary judgment.[1]

---

[1] In any event, "[t]he legal standard—and the question for the court at summary judgment—is only
whether the evidence permits a reasonable factfinder to find that the employer [discriminated]
against the employee." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).
"That legal standard applies no matter how an employee presents [his] circumstantial evidence." *Id.*

The City argues that Mr. Jones "fails to meet his burden of establishing that a convincing mosaic exists to establish intentional discrimination from the final decisionmaker." Doc. 34 at 14. Specifically, the City argues that Mr. Jones has not shown that "officers of a different race were systematically promoted over [B]lack/African American officers." *Id*. at 12. According to the City, "just the opposite is true in this case given that ten (10) [B]lack/African American officers were promoted compared to only four (4) white/Caucasian officers." *Id*. The City also argues that Mr. Jones has "presented no facts to indicate that [Lieutenant Herrera or Captain Quigley-Vining] were involved" in his promotional process and that "even if they were, the ultimate decisionmaker for the promotions was Chief Patrick Smith." *Id*. at 13.

Mr. Jones responds that he has established a convincing mosaic of intentional discrimination through his testimony that "less-qualified white candidate[s] were promoted over [him] despite his high ranking"—specifically, that "three white officers that had less experience and education [than] [him] . . . were promoted instead." Doc. 36-1 at 4–5. Mr. Jones also cites his testimony about "the involvement of Captain Quigley-Vining and then Lieutenant Herrera in [his] promotional process," who were "both heavily involved in [his] past EEOC charges and lawsuits against the [City]." *Id*. at 4. Mr. Jones makes no arguments about Chief Smith or

panel members assigned to score Phase 1 and Phase 2 of the promotional process. *See id*. at 3–5.

Mr. Jones has failed to establish a convincing mosaic of intentional discrimination. As an initial matter, Mr. Jones does not dispute that the City did not promote anyone from the September 2020 promotional process. *See* Doc. 34 ¶ 26; Doc. 36-1 at 1–2. Mr. Jones does not argue, and the record does not support, that the City's failure to promote him when no officer was promoted at all was discriminatory (or retaliatory). *See* Doc. 36-1 at 3–5.

The fact that white candidates with fewer years of experience and less advanced degrees than Mr. Jones were promoted in January 2021 does not by itself give rise to an inference of intentional discrimination. Whether a candidate advanced to Phase 3 depended on the scores from Phase 1 and Phase 2. The candidates' scores in Phase 1 and Phase 2 did not depend exclusively on their years of experience or education; it was possible for a candidate with less experience and education than Mr. Jones to have a higher combined score. And Mr. Jones testified that he did not know the Phase 1 or Phase 2 scores of any of the candidates who were promoted. Doc. 33-2 at 4, Depo. 47:6–10.

Moreover, the record does not allow a reasonable jury to find that Captain Quigley-Vining and Lieutenant Herrera made the decision to not promote Mr. Jones. *See Jenkins*, 26 F.4th at 1250 (requiring "a convincing mosaic of circumstantial

evidence that would allow a jury to infer intentional discrimination by the decisionmaker") (cleaned up). Mr. Jones does not dispute that Captain Quigley-Vining and Lieutenant Herrera were not assigned to score his Work Sample Exercise or PAW, either in the September 2020 promotional process or the January 2021 promotional process. *See* Doc. 34 ¶¶ 20, 21, 27, 28; Doc. 36-1 at 1–2. Mr. Jones also does not dispute the City's assertion that Chief Smith was the ultimate decisionmaker over the promotional process.[2] *See* Doc. 34 ¶ 47; Doc. 36-1 at 2.

Although the court credits Mr. Jones's testimony on summary judgment, Mr. Jones testified only that an unnamed supervisor told him that Lieutenant Herrera and Captain Quigley-Vining were "involved" in the grading of his promotion. Doc. 33-1 at 10, Depo. 32:23–33:9. Mr. Jones did not testify about the nature or extent of their involvement, and he cites no evidence about the nature or extent of their involvement in opposition to summary judgment. To the extent that Mr. Jones suggests (without arguing) a cat's paw theory of intentional discrimination, he failed to develop "evidence that the ultimate (and manipulated) decisionmaker—the puppet—followed the biased recommendation of another—the puppeteer—without independently investigating the complaint against the employee." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1301 (11th Cir. 2023) (cleaned up).

---

[2] Mr. Jones does not argue that Chief Smith discriminated against him on the basis of race. *See* Doc. 36-1 at 3–5. Mr. Jones testified only about Chief Smith's relationships with female candidates. Doc. 33-1 at 9, Depo. 27:6–28:9.

Mr. Jones cites no evidence that Chief Smith or the assigned panel members relied on biased recommendations of Lieutenant Herrera and Captain Quigley-Jones without independent investigation or assessment of his Work Sample Exercise and PAW. "[I]nferences in favor of a plaintiff [on summary judgment] can be based only on evidence—not on speculation." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1017 (11th Cir. 2023).

Accordingly, the record does not allow a reasonable jury to infer that the City discriminated against Mr. Jones based on his race by failing to promote him, and summary judgment is **GRANTED** in favor of the City on Mr. Jones's Title VII race discrimination claim.

### B. Title VII Retaliation Claim

"To make a *prima facie* case for a claim of retaliation under Title VII, a plaintiff must first show (1) that [he] engaged in statutorily protected activity, (2) that [he] suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel*, 967 F.3d at 1134 (cleaned up). "[A] retaliation claim must reflect actual, subjective—not constructive—discrimination; thus, [the plaintiff] [has] to present evidence that would allow a jury to find that the decision-makers were aware of the protected conduct." *Copeland v. Ga. Dep't of Corrs.*, 97 F.4th 766, 783 (11th Cir. 2024) (cleaned up). "If a form of protected activity and subsequent adverse action occur very close in time to one another, a jury

may infer that the decisionmaker knew of the protected activity and that it served as one motivation for the adverse action, establishing causation." *Id*. (cleaned up). "Even a three-month interval between the protected expression and the employment action . . . is too long[]" to establish causation. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id*. (cleaned up).

"Once the *prima facie* case is established . . . [t]he burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action." *Gogel*, 967 F.3d at 1135. "If the employer produces such a reason . . . the plaintiff must then demonstrate that the proffered reason was merely a pretext to mask retaliatory actions." *Id*. (cleaned up). "[T]o establish pretext . . . a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id*. at 1136 (cleaned up). "A reason is not pretext for retaliation unless it is shown *both* that the reason was false, *and* that retaliation was the real reason." *Id*. (cleaned up). The plaintiff must "provide evidence from which one could reasonably conclude that but for [his] alleged protected act, [his] employer

would not have [acted adversely against him]."[3] *Id*. "While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." *Id*. at 1137 n.15.

The City "does not dispute that [Mr. Jones] engaged in a protected activity in filing his EEOC Charges as well as his previous lawsuits." Doc. 34 at 15. The City also "does not dispute that [Mr. Jones's] failure to be promoted to Police Sergeant in and around January 2021 constitutes an adverse employment action for purposes of this summary judgment." *Id*. But the City argues that Mr. Jones has failed to establish the necessary casual connection between the protected activity and adverse employment action. *Id*. at 15–16. Specifically, the City asserts that based on Mr. Jones's lawsuit filed on or around October 9, 2019,[4] "[t]here is well over a year between the closest protected activity and the adverse employment action of not receiving the promotion[,]" and that a gap of "more than a year" cannot give rise to an inference of causation. *Id*. at 17. The City also argues that its "legitimate non-discriminatory reason" for not promoting Mr. Jones in January 2021 was that he

---

[3] The Eleventh Circuit has not "squarely address[ed] whether the but-for test should apply at the *prima facie* or pretext stage of analysis." *Gogel*, 967 F.3d at 1135 n.13. The court assumed in *Gogel* that "the but-for test is to be applied at the pretext stage of the summary judgment examination." *Id*.

[4] That action was filed on August 29, 2019, not October 9, 2019. *See* Complaint, *Jones v. City of Birmingham*, 2:19-cv-1426-CLM (N.D. Ala. Aug. 29, 2019), ECF No. 1. A summons was issued as to the City on October 9, 2019. *See id*. at ECF No. 4.

"simply did not score high enough in Phases 1 and 2 to progress to Phase 3," and that Mr. Jones "has offered no evidence that the [City's] promotional process was pretextual." *Id*. at 19.

Mr. Jones responds that he "engaged in a statutorily protected activity by filing his original EEOC charges of discrimination," Doc. 36-1 at 7, which predates the filing of the lawsuit based on one of those charges in 2019. Mr. Jones does not argue that he engaged in a protected activity by filing the lawsuit in 2019; he also does not argue that he engaged in protected activities with respect to that lawsuit on dates other than when he filed the complaint. *See id*. at 5–7. Mr. Jones does not dispute the City's assertion that October 9, 2019, was the last date on which he engaged in a protected activity before the City's failure to promote him in January 2021. *See id*.

Without making any argument about temporal proximity, Mr. Jones asserts that he has established "that his protected activity and the adverse employment action are not wholly unrelated" through his deposition testimony. *Id*. at 7. Specifically, he cites his testimony "that Jill Madajczyk, who was previously the subject of [his] prior EEOC charges, was involved in the promotional process," and "that Captain Quigley-Vining and then Lieutenant Herrera, who were also both subjects of [his] previous EEOC charges and lawsuits, were involved in grading" the

promotional process. *Id*. Mr. Jones makes no argument about whether he has established that the City's proffered justification was a pretext for retaliation.

Because it is undisputed that Mr. Jones's last protected activity took place in October 2019 whereas the adverse employment action occurred in January 2021, the temporal proximity is not close enough to establish causation. And the record lacks other evidence that could allow a reasonable jury to find causation. Mr. Jones cites only his testimony that Ms. Madajczyk, Captain Quigley-Vining, and Lieutenant Herrera were named in prior EEOC charges or lawsuits and that they were involved in the promotional process. He does not cite any statements that they made that suggest a retaliatory motive.

Moreover, as the court already held, the record does not allow a reasonable jury to find that Captain Quigley-Vining and Lieutenant Herrera made the decision to not promote Mr. Jones. The same is true of Ms. Madajczyk. Mr. Jones relies on his testimony that it was his "understanding[ that] each time that [he] took the exam, [Ms. Madajczyk] was a part of it, of going over the program, reviewing and scoring it." Doc. 33-2 at 5, Depo. 50:4–6. But Ms. Madajczyk was not a panel member assigned to score either Phase 1 or Phase 2 of Mr. Jones's January 2021 promotional process. Although the City's policy provided that PAWs "will be scored by [Birmingham Police Department] leadership, with oversight from Human Resources to ensure consistency across all candidates," Doc. 33-9 at 33, Mr. Jones makes no

argument—and cites no evidence—that the "oversight from Human Resources" meant that Ms. Madajczyk was the ultimate decisionmaker over the promotional process. Mr. Jones also does not argue or cite evidence that assigned panel members relied on biased recommendations of Ms. Madajczyk without independent investigation or assessment of his Work Sample Exercise and PAW.

The evidentiary deficit as to causation applies also to pretext. Mr. Jones developed no evidence that could cast doubt on the City's proffered explanation that he was not promoted in January 2021 because he did not score high enough in Phases 1 and 2 to rank among the top fourteen to advance to Phase 3. As the court already explained, the candidates' scores in Phase 1 and Phase 2 did not depend exclusively on their years of experience or education; it was possible for a candidate with less experience and education than Mr. Jones to have a higher combined score. And in the light of Chief Smith's email that the City had fewer openings for the position of a Police Sergeant than it had expected, it is not inconsistent for Mr. Jones to have advanced to Phase 3 in September 2020, but not in January 2021. Accordingly, Mr. Jones has failed to provide evidence showing that but for his protected activities, City would not have failed to promote him in January 2021, and summary judgment is **GRANTED** in favor of the City on Mr. Jones's Title VII retaliation claim.

## IV.    CONCLUSION

For the reasons explained above, summary judgment is **GRANTED** in favor of the City on both Mr. Jones's Title VII race discrimination claim and retaliation claim. The Clerk of Court is **DIRECTED** to close the case.

**DONE** and **ORDERED** this 18th day of July, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE